[Civ. No. 19116. First Dist., Div. Two. Feb. 20, 1961.]

WILSON J. TRUMAN et al., Appellants, v. WILLIAM H. ROYER, as City Councilman, etc., et al., Respondents.

[Civ. No. 19165. First Dist., Div. Two. Feb. 20, 1961.]

JOSEPH B. FERRANDO et al., Plaintiffs and Appellants, v. THE CITY COUNCIL OF THE CITY OF REDWOOD CITY et al., Respondents; WILSON J. TRUMAN et al., Interveners and Appellants.

Joseph D. Taylor for Appellants in Civ. No. 19116 and for Interveners and Appellants in Civ. No. 19165.

Robert J. Dell'Ergo and James M. Paxton for Plaintiffs and Appellants in Civ. No. 19165.

Robert J. Costello, City Attorney, and Richard E. Gardella, Assistant City Attorney, for Respondents.

SHOEMAKER, J. — These are appeals from judgments arising out of proceedings to qualify a referendum petition with reference to a rezoning of property in Redwood City.

On November 3, 1958, the Redwood City Council enacted an ordinance rezoning certain lots owned by the Ferrandos. Redwood City is a freeholders' chartered city, and the charter, section 6, provides that the referendum power may be exercised on ordinances passed by the council "under and in accordance with the constitution and general laws of the state"; section 16 provides generally that ordinances shall not go into effect until 30 days after their final passage. On December 1, 1958, 25 separate sections of a purported referendum petition as to the ordinance of November 3d were presented to the city council and referred to the city clerk. On December 9, 1958, the city clerk executed a certification which indicated the petition was insufficient as not signed, as of the time the petition was filed, by 10 per cent of the 21,101 registered voters of Redwood City.

After examining the petition, the city clerk found (1) that the circulators' affidavit attached to each section of the petition failed to state that they were voters of the city or their residential addresses; (2) that 2,627 persons signed the petition; (3) that of these signatures 670 were obtained by circulators who were neither voters nor residents of Redwood City; (4)

that 55 signers were not registered voters at the addresses stated in the petition; (5) that 2 signatures were not followed by any precinct number; (6) that 25 signatures showed incorrect precinct numbers; and (7) that disregarding the above-mentioned defects the petition was signed by more than 10 per cent of the city's voters registered at the time of filing. Acting upon the assumption that those sections of the petition which were circulated by persons who were neither residents nor voters of the city were invalid, the clerk disqualified 670 signatures, leaving a total of 1,957 signatures or 153 signatures less than the required 10 per cent of the registered voters of Redwood City. On December 9, 1958, as a result of the above-mentioned computations, the clerk executed a certificate that the petition was insufficient.

On December 19, 1958, appellants Truman et al. filed a petition for writ of mandamus questioning the validity of the clerk's actions. On March 4, 1959, after oral argument and submission of written authorities, the court issued a memorandum of opinion sustaining a general demurrer to the petition with 20 days' leave to amend and indicating therein that if the clerk had in fact checked the petition against the voting records and found from such inspection a sufficient number of registered voters signed the petition, the petition would be sufficient. The leave to amend gave the appellants Truman et al. an opportunity to allege such facts.

Before the petitioners filed an amendment and on March 16, 1959, the clerk certified the petition as sufficient. In an accompanying letter he stated that he did in fact check the signatures on the petition and found such to be signed by more than 10 per cent of the city's registered voters.

Thereafter the appellants Truman et al. failed to amend their petition within the time allowed by the court and a judgment of dismissal was entered and filed on April 2, 1959.

On April 6, 1959, a petition for writ of mandate was filed by appellants Ferrando, as owners of the property rezoned by the ordinance, questioning the validity of the clerk's actions of March 16, 1959, certifying the petition as sufficient. Judgment was entered denying the relief sought by the appellants Ferrando on August 24, 1959, and brought forth this appeal by the Ferrandos on August 28, 1959.

In the meantime and on May 26, 1959, although satisfied by the qualifying of their petition, in view of the bringing of the Ferrando action on April 6, 1959, Truman et al. appealed in their matter so as to preserve such rights as they

might have in the event of an adverse ruling in the Ferrando proceeding.

The Charter of Redwood City, insofar as it is applicable here, provides, in section 6: "Ordinances may be initiated, or the referendum exercised on ordinances passed by the council, under and in accordance with the constitution and general laws of the state . . . ;" and in section 71: "All general laws of the state applicable to municipal corporations, including those relating to 'municipal affairs,' now or hereafter enacted, and which are not in conflict with the provisions of this charter or with ordinances or resolutions hereafter enacted, shall be applicable to the city."

Elections Code, section 1773, dealing with referendum petitions, incorporates and makes applicable to referendum procedure the provisions of Elections Code, sections 1708 through 1723, pertaining to initiative petitions. (*Whittemore* v. *Seydel* (1946), 74 Cal.App.2d 109, 114 [168 P.2d 212].) Section 1708 provides:

"Each separate paper shall have attached an affidavit made by a voter of the city. The affidavit shall state that the affiant circulated that particular paper, saw written the signatures appended thereto and that he resides at . . .; and that according to the best information and belief of the affiant:

"(a) Each is the genuine signature of the person whose name it purports to be.

"(b) The signer is a voter of the city."

Under this section, as we have seen, 670 signatures were found by the clerk to be defective because they had been obtained by persons not registered voters of the city. However, the propriety of the city clerk's action in thereafter accepting them as valid signatures has been long settled in the law of California. It has been held that the clerk's duties in matters of this character are purely ministerial and not judicial (*Reites* v. *Wilkerson* (1950), 95 Cal.App.2d 827, 829 [213 P.2d 773]); his duty is to examine the individual signatures to ascertain if they comply with the requirements of the law, and if an adequate number are filed, he must certify the petition as sufficient. (*Tilden* v. *Blood* (1936), 14 Cal.App.2d 407, 413 [58 P.2d 381].) A clerk may refuse to certify petitions because of noncompliance with such provisions. However, while such requirements are mandatory upon petitioners, they are for the benefit and convenience of the clerk, and if he checks

the petition with the voters' register and finds the signers qualified, he must certify the petition as sufficient. (*People* v. *City of Belmont* (1929), 100 Cal.App. 537, 541 [280 P. 540].) ■■ The defective affidavits accompanying the referendum petition are not part of the petitions themselves, and failure of such should not invalidate a petition which was in fact signed by the requisite number of qualified voters who themselves had complied with all statutory requirements to make their petition effective. (*Whittemore* v. *Seydel, supra,* at pp. 115-116.) ■■ Inasmuch as the power of referendum is one reserved to the people, and in order to protect the people in the exercise of this power, statutory and charter provisions dealing with such powers are always liberally construed in favor of the power. (*Blotter* v. *Farrell* (1954), 42 Cal.2d 804, 809 [270 P.2d 481].) The clerk was duty bound to certify the petition as sufficient when his investigation disclosed an ample number of qualified signers.

Elections Code, section 1709, provides that within 10 days after filing the clerk shall make his certificate. The petition was filed on December 1, 1958. The first certificate of the clerk was issued on December 9, 1958. The second certificate was issued on March 16, 1959. Since the second certification did not occur within the 10-day period, the appellants Ferrando argue that the referendum was insufficient. ■■■ Where a clerk corrects a mistake in certification of a referendum petition, such action is deemed to relate back to the date of the original certificate. (*Willett* v. *Jordan* (1934), 1 Cal.2d 461, 464 [35 P.2d 1025].) Therefore, time lapse between the two certifications is not fatal.

In view of the foregoing discussion, it is not necessary that we discuss any other matters raised in either of the appeals.

The judgments and order are affirmed.

Kaufman, P. J., and Draper, J., concurred.