13 P.3d 772

**KZPZ BROADCASTING, INC.,**
Plaintiff—Appellee,

v.

**BLACK CANYON CITY CONCERNED CITIZENS,** Intervenor–Appellant.

No. 1 CA–CV 00–0128.

Court of Appeals of Arizona,
Division 1, Department C.

Nov. 30, 2000.

Lewis and Roca LLP by Richard A. Halloran and Daniel A. Goldfried, Robert G. Schaffer, Phoenix, Attorneys for Plaintiff–Appellee.

Irvine Van Riper, P.A. by Ellen M. Van Riper, Phoenix, Attorneys for Intervenor–Appellant.

**OPINION**

VOSS, Presiding Judge.

¶ 1 Appellant Black Canyon City Concerned Citizens ("Citizens") appeals from the trial court's summary judgment in favor of appellee KZPZ Broadcasting, Inc. ("KZPZ") in this successful challenge to the validity of referendum petition sheets circulated by nonresidents of Yavapai County. The primary issue before us is whether any statutory authority precludes the circulation of county referendum petitions by nonresidents of the county who are otherwise qualified electors in Arizona, and, if so, whether such a restriction can withstand constitutional scrutiny after the United States Supreme Court's decision in *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999). We conclude that no statutory authority in January 1999 could have required invalidation of referendum petition sheets circulated by nonresidents of Yavapai County who were otherwise qualified electors in Arizona, because such a restriction would not withstand the strict scrutiny required under the free speech protections of the First and Fourteenth Amendments to the United States Constitution.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In January 1999, Citizens collected signatures on a petition to bring a referendum in Yavapai County challenging the actions of the Yavapai County Board of Supervisors in granting a special use permit to KZPZ to erect seven radio towers in Black Canyon City. Citizens was required to obtain the referendum petition signatures within thirty days of the Board's approval of the minutes reflecting the action. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") § 19–142(A). The parties do not dispute the following relevant facts: (1) twenty-five of the thirty-two referendum petition circulators were Yavapai County residents; (2) the remaining seven petition circulators were residents of either Maricopa County or Pinal County; (3) all thirty-two circulators were registered voters in Arizona; and (4) the referendum would not qualify for the ballot unless the petition sheets circulated by the Maricopa and Pinal County residents were included in the signature count. The Yavapai County Elections Director included the signatures on petition sheets circulated by the nonresidents of Yavapai County, and on March 24, 1999, certified that the referendum qualified for the ballot.

¶ 3 KZPZ filed a special action in superior court, seeking to enjoin the placement of the referendum on the ballot, and challenging the validity of the signatures collected by the nonresident circulators. Citizens intervened, and by stipulation was allowed to defend the Election Director's and the County Recorder's certification of the referendum.

¶ 4 The parties filed cross-motions for summary judgment. KZPZ contended that, because only residents of Yavapai County are statutorily qualified to circulate referendum petitions on county ordinances, the signatures obtained on petition sheets circulated by the Maricopa and Pinal County residents should have been invalidated by the County Recorder. Citizens contended that no such local residency restriction was imposed on Arizona residents as petition circulators under Arizona law, and alternatively that, if such a restriction existed, it was unconstitutional.

¶ 5 The trial court concluded that, although the former statutory requirement that referendum petition circulators be "qualified electors" was no longer constitutionally valid after the United States Supreme Court's decision in *Buckley*, the unconstitutional portion of the statute that required a petition circulator to be a registered voter could be severed, leaving the remaining constitutional requirement that a circulator be "qualified to register to vote." The trial court concluded that this restriction "includes a requirement of residency in the political subdivision, is not a violation of the First Amendment and is not unconstitutional." Therefore, the court held, "the circulator must be qualified to register to vote in a county election and be a resident of that county." Because seven of the petition circulators were not Yavapai County residents, the court ruled that the petition signatures they collected must be subtracted, and ordered the County Recorder and Elections Director to "disqualify all invalid signatures, that the referendum not be placed on any election ballot and that the Board of Supervisors' January 4, 1999 approval of a special use permit is effective." After the trial court granted summary judgment in KZPZ's favor and awarded it attorneys' fees, Citizens timely appealed.[1]

## DISCUSSION

### 1. *Standards of Review*

■■■ ¶ 6 In reviewing an order granting summary judgment, we must determine whether there is a genuine issue of disputed material fact and, if not, whether the trial court correctly applied the substantive law. *See In re Estate of Johnson*, 168 Ariz. 108, 109, 811 P.2d 360, 361 (App.1991). Questions of law are reviewed *de novo*. *See State v. Malvern*, 192 Ariz. 154, 155, 962 P.2d 228, 229 (App.1998).

### 2. *Justiciability Issues*

¶ 7 As a preliminary matter, we address issues raised on appeal regarding the justiciability of this action.

---

1. KZZP and the County defendants entered into a Stipulation Regarding Settlement and Compromise, in which the County defendants agreed not to appeal.

### A. *Plaintiff's Standing to Challenge a Referendum*

¶ 8 In a motion to dismiss, Citizens challenged KZPZ's standing to bring this lawsuit, contending that, as a corporation, KZPZ was not a "citizen" entitled to challenge the referendum certification within the meaning of A.R.S. sections 19–122(C) and 19–121.03(B). Our review of this issue is *de novo. See Gemstar, Ltd. v. Ernst & Young,* 185 Ariz. 493, 499, 917 P.2d 222, 228 (1996).

¶ 9 The trial court ruled as follows:

The Court finds that for purposes of challenging a referendum or an election, a corporation is a citizen. A.R.S. § 19–121.02(B) specifically provides that any citizen may challenge in the Superior Court the certification made by a County Recorder pursuant to § 19–121.02 within ten (10) calendar days of the receipt thereof by the Secretary of State. In A.R.S. § 19–101, the Legislature has prescribed that a form of petition for referendum must now contain in part the following language, "We, the undersigned citizens and qualified electors...." And [in] § 19–102, the Legislature requires the same language in an initiative petition. However, in A.R.S. § 19–121.03, which provides for judicial review of actions by the County Recorder, paragraph B, provides that any citizen may challenge in the Superior Court the certification made by a County Recorder and does not require the citizen to also be [a] qualified elector. Article 14 Section 1 of the Arizona Constitution provides in part that corporations shall have the right to sue and shall be subject to be sued, in all courts, in like cases as natural persons.

The Court finds that the Legislature in specifically requiring that a citizen be a "qualified elector" for certain purposes and ... [not requiring] a citizen to be [a] "qualified elector" for other purposes, specifically has not limited the "citizen" to take certain action or to challenge certain statutes. Had the Legislature so intended, it would have specifically required the "citizen" in § 19–121.03 to not only be a citizen but also a qualified elector.

The Court also finds that KZPZ has a personal stake in the outcome as required

by *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Therefore, the Court concludes KZPZ has standing.

¶ 10 We set forth this ruling in its entirety because we find it well-reasoned and legally correct. Citizens argues that only a "natural person" can be included in the meaning of "citizen," relying on *Alliance Marana v. Groseclose,* 191 Ariz. 287, 955 P.2d 43 (App.1998). That case, however, held only that a plaintiff who was not a "citizen" of the town and had no interest in the outcome of the litigation, had no standing to compel the town clerk to forward the referendum petitions to the county recorder. 191 Ariz. at 289, 955 P.2d at 45. Additionally, Citizens' references to cases in which various courts have interpreted a "citizen" to be "a natural person" have no application to our statutory interpretation within the context of Titles 19 and 16. We therefore find no ground for reversal on this basis.

### B. *Indispensable Parties*

¶ 11 Citizens also contends that the trial court erred in denying its motion to dismiss on the ground that KZPZ failed to join, as indispensable parties to this suit, both Yavapai County and the Yavapai County Board of Supervisors. The trial court ruled:

The Court finds that neither Yavapai County nor the Yavapai County Board of Supervisors are necessary or indispensable parties. The Plaintiff's claim for relief seeks to compel the County Recorder and the Elections Director to comply with statutory duties, including disqualifying alleged irregular and defective petitions filed by BCCCC and refusing to certify BCCCC's referendum for the ballot. These are not duties imposed on the County or the Board of Supervisors, consequently neither are necessary or indispensable parties.

¶ 12 We agree with this ruling. This case was brought as a statutory special action pursuant to A.R.S. section 19–121.03 for judicial review of the actions of the Yavapai County Recorder, and seeking a writ of man-

damus compelling the County Recorder and the Yavapai County Elections Director to decertify the referendum and remove it from the ballot. No order was sought against either the County itself or the Board of Supervisors. Citizens argues that the power to call a county election is vested exclusively in the Board of Supervisors. However, this power is not at issue in this case. The complaint did not seek to prevent an election but only to keep a referendum off the ballot. Under the criteria set forth in Rule 19, Arizona Rules of Civil Procedure, the County and the Board of Supervisors were neither necessary nor indispensable to (1) complete relief being afforded among those already parties; (2) the protection of any interest in the referendum, or (3) the prevention of inconsistent obligations. *See Gerow v. Covill,* 192 Ariz. 9, 14, 960 P.2d 55, 60 (App.1998). The trial court therefore properly denied the motion to dismiss on this basis.

### 3. *Statutory Requirements for Referenda Petition Circulators*

¶ 13 At the time the petitions were circulated, A.R.S. section 19–114(A) provided, in part, that "no person other than a qualified elector[2] shall circulate an initiative or referendum petition and all signatures verified by any such person shall be void and shall not be counted in determining the legal sufficiency of the petition." A "qualified elector" was defined as a "person who is qualified to register to vote pursuant to section 16–101 and who is properly registered to vote, if he is at least eighteen years of age on or before the date of the election." A.R.S. § 16–121(A). A "person who is qualified to register to vote" included "[e]very resident of the state," with some restrictions not relevant here. A.R.S. § 16–101(A). "Resident," for the purposes of determining who was qualified to register to vote, was defined as "an individual who has physical presence in this state, or for purposes of a political subdivision actual physical presence in the political subdivision combined with an intent to remain." A.R.S. § 16–101(B).

¶ 14 KZPZ's contention, with which the trial court agreed, was that this statutory scheme required a petition circulator to be a "resident" in the political subdivision in which the referendum petition was to be filed, and that this restriction was not unconstitutional. On appeal, Citizens argues that no provision of either Title 19 or Title 16 "expressly, clearly, and unambiguously required circulators of petitions for local referenda to be qualified electors or residents of the county, city, or town. All that this statute required was that the circulators be 'qualified electors.'"

¶ 15 The trial court's ruling was based, in part, on the following reasoning from the Arizona Supreme Court:

Arizona's circulator requirement is intended to ensure that those involved in direct law making have ties to the state and a stake in the outcome. "We can think of no better way to preserve the integrity of the referendum process as it relates to local ordinances than to require that only those eligible to vote for the members of the body which passed the ordinance be able to engage in the 'core political speech' of attempting to gather signatures to challenge the ordinance."

*McDowell Mountain Ranch Land Coalition v. Vizcaino,* 190 Ariz. 1, 4, 945 P.2d 312, 315 (1997) (quoting *Browne v. Russell,* 27 Cal. App.4th 1116, 33 Cal.Rptr.2d 29, 34 (1994)). In *Vizcaino,* however, the issue was the "residency" of Arizona nonresidents; the court affirmed the trial court's findings that the validity of the voter registrations of several nonresident circulators' was rebutted by clear and convincing evidence that they had no intent to remain in Arizona, but merely operated as "political vagabonds," with no interest in the issues contained in the petitions they circulated or stake in the outcome of the changes sought. *Id.* The *Vizcaino* court did not address whether Arizona residents circulating county referenda petitions were required to be residents of the county in which the referendum was sought.

---

**2.** Following the *Buckley* decision, the Arizona legislature changed the "qualified elector" requirement to "qualified to register to vote." *See*

1999 Ariz. Sess. Laws, ch. 353 (1st reg.sess.), amending A.R.S. §§ 19–112, –114, –121.01, –121.04.

¶ 16 The only other Arizona authority we have found supporting the proposition that a petition circulator must be a resident of the locality rather than the state is in a case decided before *Buckley*, in which a person who was not a town resident was found to lack standing to challenge the town clerk's refusal to forward referendum petitions. *See Alliance Marana v. Groseclose*, 191 Ariz. 287, 955 P.2d 43 (App.1998). The court concluded that the plaintiff's only "claimed interest" in the litigation, because he could not sign a petition or vote in the referendum election as a town resident, was that he had circulated some of the petitions; however, pursuant to a local town ordinance, only "qualified electors" of the town were permitted to circulate petitions. *Id.* at 289, 955 P.2d at 45 (citing Marana Ordinance 89.24). No Arizona statutory authority was cited to require a circulator of a town referendum petition to be a town resident.

¶ 17 We find support for Citizens' statutory interpretation by examining other areas of Title 19 to discern the legislature's intent. *See Talley v. Industrial Comm'n*, 137 Ariz. 343, 346, 670 P.2d 741, 744 (App.1983)("all parts of a statute relating to the same subject will be construed together"). Circulators of initiative and referendum petitions are required to state in their affidavit that, in their belief, "each **signer** was a qualified elector of a certain county of the state, or, in the case of a city, town or county measure, of the city, town or county affected by the measure on the date indicated." A.R.S. § 19–112(B)(emphasis added). However, as a contrasting example, the requirements set forth for the circulator's affidavit on a recall petition are as follows:

> The affidavit shall be in the form prescribed for initiative and referendum. In addition it shall also require a statement by the circulator that the circulator believes **that the circulator and** all signers thereof are qualified to vote in the recall election.

A.R.S. § 19–205(C)(emphasis added). No similar language is included requiring a referendum petition circulator to swear that he or she is a resident of the political subdivision affected by the measure.

¶ 18 KZPZ also argues that the statutory form of the circulator's affidavit lends support to its position that a circulator must be a resident of the county in which the referendum is sought. The affidavit requires the circulator to state that he or she is "a qualified elector in the county of _____, in the state of Arizona at all times during my circulation of this petition sheet," and requires the listing of a residence address and county of registration. A.R.S. § 19–112(D). This requirement, however, does not restrict the circulator's residency to more than the state of Arizona. Rather, the purpose of requiring the circulator to state his or her county of residence appears to be to enable the secretary of state (or the county elections director, in the case of a local referendum) to verify the circulator's eligibility with the appropriate county recorder. *See* A.R.S. § 19–121.02.

¶ 19 KZKP, on the other hand, makes a convincing argument that the literal wording of the 1999 statutes, read in para materia, supports the trial court's conclusion that, in order to qualify to circulate petitions for a local referendum, the circulator must be a qualified elector of the locality. We agree that, in construing a statute, we must construe statutes regarding the same subject matter to "harmonize rather than contradict each other 'if sound reasons and good conscience allow.'" *Ban v. Quigley*, 168 Ariz. 196, 198, 812 P.2d 1014, 1016 (App.1990) (quoting *City of Mesa v. Salt River Project Agric. Improv. & Power Dist.*, 92 Ariz. 91, 98, 373 P.2d 722, 727 (1962)). Furthermore, we must examine the statutory scheme as a whole, to give effect to all the statutes involved. *See Pima County v. Maya Constr. Co.*, 158 Ariz. 151, 155, 761 P.2d 1055, 1059 (1988).

¶ 20 In 1991, the legislature added the definition of "resident" to A.R.S. section 16–101(B), requiring actual physical presence in a local subdivision combined with an intent to remain, to apply to a "qualified elector" as defined in A.R.S. section 16–101(A). *See* 1991 Ariz. Sess. Laws Ch. 1, § 2 (40th Legis., 3d Spec.Sess.)(amending A.R.S. § 16–101(B)). That same legislative enactment made extensive changes to various sections

in both Titles 16 and 19 regarding initiative, referendum, and recall elections. *See id.,* S.B. 1001. The legislature did not, however, change the requirement in section 19–114(A) that a petition circulator must be a "qualified elector." *See id.* at Ch. 9. Reading these statutes together, one could logically conclude that a petition circulator, required to be a "qualified elector" pursuant to A.R.S. section 19–114(A), defined as "a person qualified to register to vote" pursuant to A.R.S. section 16–121(A), was also required to be a "resident" of the political subdivision pursuant to A.R.S. section 16–101(B).

¶ 21 We are thus faced with two possible constructions of this statutory scheme: the literal language of the statutes supporting one interpretation but the doctrine of harmonious construction supporting another. We must, however, interpret a statute in a way that renders it constitutional; if there are any uncertainties, we must resolve them in favor of constitutionality. *State v. Gilfillan,* 196 Ariz. 396, 405, 998 P.2d 1069, 1074 (2000). We therefore are squarely faced with one of the constitutional questions raised in this case: whether a statutory local residence requirement for circulators would be constitutional after *Buckley.*

4. *Constitutional Analysis*

¶ 22 Normally, a constitutional issue need not be addressed if a case can be decided on a nonconstitutional ground, such as pure statutory interpretation. *City of Sierra Vista v. Director, Ariz. Dep't of Environmental Quality,* 195 Ariz. 377, 379, 988 P.2d 162, 164 (App.1999). However, in this case, the constitutional issue is inextricably intertwined with our statutory interpretation and forms the basis for our ultimate conclusion; we therefore find its discussion essential.

¶ 23 In *Buckley,* the Court held unconstitutional a Colorado statute that required circulators of initiative petitions to be registered voters. 525 U.S. at 197, 119 S.Ct. 636. Applying a strict scrutiny analysis because petition circulation is "core political speech" for which First Amendment protection is "at its zenith," *id.* at 186–87, 119 S.Ct. 636, the

Court concluded that the registered voter requirement "drastically reduces the number of persons, both volunteer and paid, available to circulate petitions." *Id.* at 193, 119 S.Ct. 636 (citing *Meyer v. Grant,* 486 U.S. 414, 423, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988)). The state could not justify this burden on political expression with a compelling interest protected by a narrowly tailored restriction, because other reliable safeguards already protected those interests:

> The State's dominant justification appears to be its strong interest in policing lawbreakers among petition circulators. Colorado seeks to ensure that circulators will be amenable to the Secretary of State's subpoena power, which in this these matters does not extend beyond the State's borders.... The interest in reaching law violators, however, is served by the requirement, upheld below, that each circulator submit an affidavit setting out, among several particulars, the "address at which he or she resides, including the street name and number, the city or town, [and] the county." ... This attestation, we note, has an immediacy, and corresponding reliability, that a voter's registration may lack.

525 U.S. at 196, 119 S.Ct. 636. Pointing out that no challenge had been made to Colorado's right to require circulators to be state residents, the Court noted that the Tenth Circuit had found that a residency requirement "more precisely achieved the State's subpoena service objective," and concluded:

> In sum, assuming that a residence requirement would be upheld as a needful integrity-policing measure—a question we, like the Tenth Circuit, ... have no occasion to decide because the parties have not placed the matter of residence at issue—the added registration requirement is not warranted. That requirement cuts down the number of message carriers in the ballot—access area without impelling cause.

*Id.* at 197, 119 S.Ct. 636.

¶ 24 After *Buckley,* therefore, the question of the constitutionality of a state residency requirement on petition circulators is left

open. Assuming, without deciding,[3] that a state residency requirement would be upheld as a narrowly tailored restriction protecting the state's compelling interest in policing its elections through statewide subpoena power to contact circulators, we do not see how the more restrictive requirement of county residency would survive strict scrutiny. The more local the residency restriction becomes, the smaller the pool of available petition circulators becomes, thus limiting political conversation about proposed changes, but with no corresponding heightened protection of the state's interests in the integrity of its elections. By illustration, the imposition of a county residency requirement would have decreased the pool of available petition circulators from 2,271,290 (the actual number of qualified electors in Arizona in January 1999) to 88,501 (the actual number of qualified electors in Yavapai County in January 1999).[4] Correspondence with Arizona Secretary of State, Sept. 12, 2000. Given the short time frame in which to collect significant numbers of signatures, it is apparent that this restriction would place a heavy burden on political expression regarding referendum issues in our smaller counties.

¶ 25 KZKP also argues, however, that, besides its interest in policing elections through its subpoena power, the state has a further compelling interest in assuring that local legislative measures are not delayed by petition circulators with no ties to the community or stake in the outcome of a referendum election. The local residency requirement, KZPZ contends, prevents "abuse and capture of the local referendum process by political outsiders." In determining whether this interest is compelling enough to warrant a significant burden on free speech, we must consider "the other mechanisms the State

currently employs to serve the statute's purpose." *Krislov*, 226 F.3d at 862. Here, we believe the state's valid "grass roots support" interest, *see Meyer*, 486 U.S. at 425–26, 108 S.Ct. 1886, is already protected by the statutory requirement that only county residents can cast a vote in a county referendum election. *See* A.R.S. § 16–120 (no elector shall vote in an election "unless the elector has been registered to vote as a resident within the boundaries or the proposed boundaries of the election district for which the election is being conducted"). Furthermore, the argument that, without a local residency requirement, "outsiders" could impose the cost of a local election on the county is simply not true; it is not the petition circulators who impose the cost of an election, but the county residents who sign the petition who do so. *See Molinari v. Powers*, 82 F.Supp.2d 57, 74 (E.D.N.Y.2000)(finding unconstitutional a requirement that witnesses of primary petition signatures be residents of the district). The law already provides, by the number of signatures of local residents required to place an issue on the ballot, that community interests are truly at stake in the outcome. Additionally, we are unwilling to say, as a general proposition, when local Arizona land use issues are involved, that only local residents have an interest in the outcome sufficient to entitle them to voice political expression through circulation of a referendum petition. We conclude, as the *Molinari* court did, that the "proffered reasons for the residence requirement simply cannot justify the burden the residence requirement placed on the petition gathering process." *Id.* at 75.

¶ 26 KZPZ points out that residency requirements for petition circulators have been upheld in other courts. *See Kean v. Clark*, 56 F.Supp.2d 719 (S.D.Miss.1999); *Hart v.*

---

3. The constitutionality of a state residency requirement for referendum petition circulators is not at issue in this case, because it is undisputed that all 32 circulators were Arizona residents.

4. We recognize that the number of people who could potentially circulate petitions does not indicate the true number of people who are actually willing to circulate petitions, but the burden is nevertheless evident:

It is undoubtedly true that most people excluded from soliciting signatures would likely not be avid supporters. But this fact actually un-

derscores the candidate's argument that the law severely burdens them. Candidates who do not have broad support must count on only a few supporters, and if they are not registered to vote or do not live in the district, the already small pool of volunteers will evaporate, thus greatly limiting the candidates' ability to disseminate their message and obtain the required signatures.

*Krislov v. Rednour*, 226 F.3d 851, 861 (7th Cir. 2000).

*Secretary of State,* 715 A.2d 165 (Maine 1998); *Browne v. Russell,* 27 Cal.App.4th 1116, 33 Cal.Rptr.2d 29 (1994). *Kean* and *Hart,* however, both upheld statewide residency requirements as narrowly tailored to protect the state's interest in protecting the integrity of its elections through use of the subpoena power; neither court addressed a more local restriction than a statewide residency requirement. In *Browne,* although the court upheld a city ordinance requiring a petition circulator to be a city resident, it also upheld the registered voter requirement, and may be questionable law after *Buckley.*[5] *See* 33 Cal.Rptr.2d at 33. We therefore do not find these cases persuasive.

¶ 27 In sum, if we were to construe the statutory scheme for referendum petition circulators to include a local residency requirement, we would run afoul of the First and Fourteenth Amendments under the principles set forth in *Buckley.* We broadly interpret the statutory scheme in a manner we believe supports the requirements of the Constitution. *See Sherrill v. City of Peoria,* 189 Ariz. 537, 540, 943 P.2d 1215, 1218 (1997). We therefore conclude the statutory scheme could not constitutionally include a local residency requirement for referendum petition circulators and we interpret in a way that avoids an unconstitutional result.

## 5. *Other Constitutional Issues*

¶ 28 Because our dispositive holding in this case is that the statutes regulating petition circulators could not constitutionally require local county residency, we need not address any arguments concerning the trial court's ruling that the "registered voter" element of the "qualified elector" requirement in effect

**5.** Similarly, the reasoning quoted from *Browne* by our supreme court in *Vizcaino,* 190 Ariz. at 4, 945 P.2d at 315, and adopted by the trial court in its ruling in this case, may also be questionable after *Buckley.*

**6.** *See* Arizona State Senate, Minutes of Committee on Judiciary, March 23, 1999 at 28 (analyst stated that H.B. 2656 "conforms Arizona's law to a recent Supreme Court decision regarding the qualifications of petition circulators"; it "eliminates the requirement that petition circulators be registered to vote, and instead requires that circulators be qualified to register to vote;" State Elections Director stated "that anyone who is qualified to vote can circulate petitions."). *See*

in January 1999 was clearly unconstitutional under *Buckley.* It is undisputed, in any event, that all of the petition circulators in this case were registered voters in Arizona and thus were "qualified electors" in January 1999.

¶ 29 We also need not address whether the "registered voter" requirement could properly be severed from the statute, leaving intact the "qualified to register to vote" requirement. We merely point out that the legislature's subsequent amendments, *see supra* note 2, accomplished the same result, and that those amendments were clearly intended to bring the statutory scheme into conformance with the *Buckley* decision.[6]

## 6. *Attorneys' Fees*

¶ 30 Citizens also appeals from the award of attorneys' fees against it pursuant to A.R.S. section 12–2030. Our disposition in this case moots the substantive issues raised on appeal regarding the application of this statute. Because KZPZ no longer "prevails" on the merits in this action, it is not entitled to an award of fees, and that portion of the judgment is vacated.

## CONCLUSION

¶ 31 We conclude that the statutory requirements for a referendum petition circulator could not constitutionally include county residency in the county in which the referendum is sought. Because it is undisputed that all the circulators in this case were "qualified electors" of the State of Arizona, the trial court erred in granting summary judgment in favor of KZKP.

*also* Arizona State Legislature, Minutes of Committee on Government Operations, February 17, 1999 at 14 (chairman explained that changes were "necessitated by Supreme Court case decided six weeks ago"; Maricopa County Elections Director explained "In order to be qualified to register to vote, an affidavit must be signed swearing that the circulator is qualified under Arizona law to register to vote. To be qualified, a person must be 18 years of age, consider Arizona as a place of residence, swear that they have had no felonies or if so, their rights were restored, and the individual must be a U.S. citizen.").

¶ 32 For the foregoing reasons, we reverse the trial court's judgment and vacate the order directing the Yavapai County Recorder and the Elections Director to disqualify, as invalid, the signatures obtained by the Maricopa and Pinal County petition circulators of the referendum petition. This matter is remanded for proceedings consistent with this opinion

CONCURRING: NOEL FIDEL, Judge, CECIL B. PATTERSON, Judge.

