[Civil Nos. 2896, 2902. Filed June 30, 1930.]

[289 Pac. 515.]

STATE, Garnishee-Appellant; H. CLARIDGE, Judgment-Debtor, v. H. C. ROSEBERRY, Appellee.

STATE, Garnishee-Appellant; DON C. BABBITT, Judgment-Debtor, v. J. S. WYATT, Appellee.

Mr. K. Berry Peterson, Attorney General, and Mr. Riney B. Salmon, Assistant Attorney General, for the State.

Mr. R. H. Brumback and Mr. E. B. Goodwin, for Appellee Roseberry.

Mr. Henry H. Miller and Mr. Austin O'Brien, for Appellee Wyatt.

ROSS, J.—The question involved in these two cases is the constitutionality of a state law providing that the salaries and wages of public officers and employees of the state may be garnished.

H. C. Roseberry, one of the plaintiffs, having obtained a judgment against H. Claridge, an employee of the state at the Industrial School, Ft. Grant, filed in said action the statutory affidavit designating the state as garnishee. The Babbitt-Wyatt case is the same in its facts except that the debtor Babbitt is the state land commissioner, an office created by the legislature.

The state, by the Attorney General, its legal representative, filed a motion to dissolve the writ, and it is from an order denying such motion that the state appeals.

Chapter 50, Session Laws of Arizona 1929, authorizes the garnishment of the salaries and wages of officers, deputies, clerks and employees of the state and its political subdivisions (section 1); provides that the writ shall be served on the state treasurer, when the state is garnished, and makes it the duty of the Attorney General to answer the writ of garnishment (section 2); adopts by reference the procedure relat-

.ing generally to garnishments (section 3); and, if a party is aggrieved by the failure of an officer to perform the duties prescribed therein, provides he may recover on such officer's official bond (section 4). Section 5 repeals all conflicting laws.

The state's motion to quash or dissolve the writ recites, as reasons therefor, the following:

"(1) That Chapter 50, *supra,* contravenes Section 14, Part 2, Article IV of the Constitution of the State of Arizona, in that said act attempts to amend by mere reference to the title the statutes of the state relating to garnishment, and said act does not set forth and publish at full length the laws as amended.

"(2) That it contravenes Section 13, Part 2, of .Article IV of the Constitution of the State of Arizona, in that said act embraces a subject not expressed in the title.

"(3) That it contravenes Article II, Section 4 of the Constitution of the State of Arizona, and the Fifth and Fourteenth amendments to the Constitution of the United States, in that said act of the legislature takes the property of Charles R. Price (state treasurer) without due process of law.

"(4) That it contravenes Article IX, Section 7 of the Constitution of the State of Arizona, in that it authorizes a donation or grant to an individual and not for a public purpose.

"(5) That it contravenes Article IX, Section 1 of the Constitution of the State of Arizona, in that it authorizes. the levying and collection of a tax for a private and not a public purpose.

"(6) That it is so indefinite and uncertain in its terms that the duties of the officers therein prescribed cannot be performed and renders the whole of said act unenforceable."

The appellant by its assignments contends that the motion to dissolve should be sustained for all the six reasons or grounds contained in its motion.

Section 3, of chapter 50, reads:

"The procedure relating generally to garnishment, and the time to answer, is hereby extended and made applicable to the garnishment of the salaries and wages above enumerated."

This provision, it is contended, contravenes section 14, part 2, article 4 of the Constitution, which prohibits the revision or amendment of an act or a section of an act by mere reference to the title of such act, and requires the revised or amended act or section to be set forth and published at full length. The appellant is in error in the assumption or claim that chapter 50 amends or revises the general procedure on garnishment. Before such chapter was enacted the salaries and wages of officers and employees of the state were immune from garnishment. Under the general garnishment law (article 2, chap. 91, Rev. Code 1928), all persons, corporations, and stock companies, except the state and its municipalities, were garnishable by creditors of their officers or employees. All chapter 50 (Laws 1929) did was to create another class of garnishees. It said, in effect, the salaries and wages of public officers and employees shall be, while in the hands of the state or its political subdivisions (heretofore immune under legislative policy), in the future under the same authority subject to garnishment, and the existing procedure relating generally to garnishment shall be followed in the enforcement of the new right. The general procedure in garnishment was adopted by reference. That the adoption by reference of another existing legislative act does not contravene said provision of the Constitution has been decided at least three times by this court. *Clements* v. *Hall,* 23 Ariz. 2, 201 Pac. 87; *In re Altman,* 26 Ariz. 635, 229 Pac. 388; *Scottish Union & National Ins. Co.* v. *Phoenix Title & Trust Co.,* 28 Ariz. 22, 235 Pac. 137.

Section 37, article 2, of the Constitution of Washington, although not word for word section 14, *supra,*

means the same thing. In *State* v. *Tausick*, 64 Wash. 69, 35 L. R. A. (N. S.) 802, 116 Pac. 651, 657, the question was whether a statute adopting a pre-existing statute impinged upon said section 37. The court held that the legislation in question was complete in itself, had no tendency to mislead or deceive, and did not violate the constitutional provision, and summed up the law in this statement:

"In *Savage* v. *Wallace, supra* [165 Ala. 572, 51 South. 605], the Supreme Court of Alabama said: 'There is a class of statutes, known as "reference statutes," which impinge upon no constitutional limitation. They are statutes in form original, and in themselves intelligible and complete—"statutes which refer to, and by reference adopt, wholly or partially, pre-existing statutes. In the construction of such statutes, the statute referred to is treated and considered as if it were incorporated in and formed a part of that which makes the reference. The two statutes coexist as separate and distinct legislative enactments, each having its appointed sphere of action; and the alteration, change, or repeal of the one does not operate upon or affect the other." *Phoenix Assurance Co.* v. *Fire Department,* 117 Ala. 631, 42 L. R. A. 468, 23 South. 483. Such statutes are not strictly amendatory or revisory in character, and are not obnoxious to the constitutional provision which forbids a law to be revised, amended or the provisions thereof to be extended or conferred, by reference to its title only. That prohibition is directed against the practice of amending or revising laws by additions or other alterations, which, without the presence of the original act, are usually unintelligible. *Ex parte Pollard,* 40 Ala. 100; *State* v. *Rogers,* 107 Ala. 444, 32 L. R. A. 520, 19 South. 909.' "

Appellant cites and relies upon *Badenoch* v. *Chicago,* 222 Ill. 71, 78 N. E. 31, as holding to the contrary. The act under question in that case was one to subject the salaries of employees of certain municipal corporations to garnishment and purported "to be an act complete in itself," but which was, in effect,

an amendment to the general statutes on attachment and garnishment. It was held to be in violation of the constitutional provision prohibiting the revival or amendment of statutes by reference to their titles only, and properly so. The act was also held to be unconstitutional for two other reasons: (1) because it authorized judgment against certain municipal officers who were not garnishees and who held no funds of the debtor; and (2) because it was class legislation. The same court in the later case of *People* v. *Crossley,* 261 Ill. 78, 103 N. E. 537, 540, speaking of such reference statutes, said:

"The effect of such reference is the same as though the statute or the provisions adopted had been incorporated bodily into the adopting statute. 2 Sutherland on Stat. Const., § 405. Such adoption takes the adopted statute as it exists at the time of the passage of the adopting act. . . . "

It is next contended that chapter 50 embraces a subject not expressed in its title. We have heretofore given the substance of the act. The title thereof is:

"An Act Authorizing the Garnishment of Salaries and Wages of Public Officers, Deputies, Clerks and Employees, and Extending the Procedural Laws Relating Generally to Garnishment, to Apply Hereto; Naming the Public Officers on Whom Such Writs of Garnishment May be Served, and Directing Certain Public Officers to Answer said Writ, Providing a Penalty; and Repealing all Acts and Parts of Acts in Conflict Herewith."

A very careful comparison of the two discloses no discrepancy. The title is as comprehensive as the body of the act. It is what we have said is not necessary (*Board of Control* v. *Buckstegge,* 18 Ariz. 277, 158 Pac. 837)—a complete index of what follows. But it is said chapter 50 amends the general procedural laws relating to garnishments, and that the title does not indicate any intention to do so. As we

have shown, such act is complete in itself and, being so, if it incidentally modifies or amends the procedural law in some of its aspects that does not impinge upon any provision of the Constitution. *Warren* v. *Crosby,* 24 Or. 558, 34 Pac. 661, 662. In this last case the court states, after a very strong and forceful presentation of the law:

" 'Statutes,' says Judge COOLEY, 'that amend others by implication are not within this provision [sec. 14, part 2. art. IV, Const. of Ariz.], and it is not essential that they even refer to the acts or sections which by implication they amend.' Cooley, Const. Lim., p. 152. Hence an act of the legislature, not amendatory in character, but original in form, and complete in itself, exhibiting on its face what the law is to be, its purpose and scope, is valid, notwithstanding it may, in effect, change or modify some other law upon the same subject."

Even though the person, upon whom service of the writ of garnishment is to be made, may not be one of those provided by the general laws, it would not make the law obnoxious to the Constitution, since chapter 50 is a complete and independent piece of legislation.

It is next contended that chapter 50 contravenes the "due process" clauses of the state and federal Constitutions. (Section 4, article 2 of the State Constitution, and the Fourteenth Amendment to the federal Constitution.) The particular feature of chapter 50 that is here assailed is section 4. Such section is evidently directed at the officers whose duty it is to see that the debtor is not paid after service of the writ; that the writ is properly answered, and that no judgment by default be entered against the state, or that the state be mulcted as a garnishee when it has no funds belonging to the debtor-officer or -employee. If this provision contravenes any constitutional right it will be time enough to pass upon it when it is raised by someone affected thereby. Should some

"party aggrieved" ever assert in court, in a proper proceeding, a right to recover from such officers damages suffered because of their dereliction of duty, the question of their liability can then properly be passed upon and not before. It is said in 12 C. J. 760, section 177:

"It is a firmly established principle of law that the constitutionality of a statute may not be attacked by one whose rights are not affected by the operation of the statute. This rule applies to all cases both at law and in equity, and is equally applicable in both civil and criminal proceedings. A constitutional question may not be raised by one whose rights are not directly and certainly affected, nor in a case where no attempt is being made to enforce the provision attacked. In other words, one attacking the constitutionality of a statute must show that it affects him injuriously and actually deprives him of a constitutional right. It is not sufficient that the statute is unconstitutional as to other persons or classes of persons; it must affirmatively appear that the person attacking the statute comes within the class of persons affected by it."

See, also, *Gherna* v. *State,* 16 Ariz. 344, Ann. Cas. 1916D 94, 146 Pac. 494. Whether this provision of the law takes property from the state treasurer or other officer without due process may never arise; certainly it will not if the officers perform their duties. At all events, such question must be raised by the officer and not the state.

Assignments four and five make the point that if the officers, whose duty it is under chapter 50 to receive the service of the writ of garnishment and to answer same, fail in the performance of their duty and pay the officer or employee after the service of the writ, or neglect to answer and thereby permit default judgment against the state, the payment of such judgment by the state would be a donation of the public moneys and in contravention of section 7, article 9, of the Constitution; and, also, since taxes may be levied and col-

lected for public purposes only, it would contravene section 1, article 9. If the officers upon whom the duty is imposed of receiving service of the writ of garnishment and answering for the state properly perform that duty, the state will not be required to pay its officers' or employees' debts out of the public moneys. The state, when the law is properly administered, will apply only such salaries and wages as have actually been earned and pay the same to the creditor instead of the officer or employee. Such a transaction would not involve the public funds but the private funds of the debtor-officer or -employee— wages already earned and held in trust by the state.

Finally, it is claimed that the act is so indefinite and uncertain in its terms as not to be enforceable. Under this head it is argued that the state treasurer has no means of knowing who are officers and employees of the state, or what salaries or wages they are drawing, or the amount the state owes, except, perhaps, elective or appointive officers whose certificates of election or appointments are filed with the secretary of state. For instance, it is said many employees are scattered throughout the state in road camps, etc.; that these employees are not paid directly by the state treasurer but at the road camps out of an imprest fund and that the treasurer has no means of knowing who are employed; that the same is true, in a measure, of the commission of horticulture and agriculture, the industrial commission, the state prison, the state hospital and other departments of the state. We think this argument tends to show only the many difficulties and troubles the officers may be put to in the performance of their duties. However, generally speaking, an inquiry of the plaintiff as to where the defendant is working and what office he occupies or employment he performs, will greatly minimize the imaginary difficulties and furnish the necessary information or means to enable the officers

to answer the writ. Under the statute any legitimate costs the state may be put to in preparing answer is a proper charge taxable to the plaintiff. Section 4275, Rev. Code 1928. In *Coggins* v. *Ely*, 23 Ariz. 155, 202 Pac. 391, 394, it was said:

"It is elementary that a court will not declare a law void for uncertainty or ambiguity, unless, after using every authorized means to ascertain and give the act an intelligent meaning, it is found impossible to clear up the doubt and dissolve the obscurity."

A similar contention to the one here made was passed upon in *Jefferson Transfer Co.* v. *Hull*, 166 Wis. 438, 166 N. W. 1, 2. The court there said:

"The administration of the statute may be attended with some difficulties on the part of public officers, but this is no reason for holding it to be unconstitutional. Similar legislation has been sustained in other states. *Ruperich* v. *Baehr*, 142 Cal. 190, 75 Pac. 782; *Hanson* v. *Hodge*, 92 Wash. 425, 159 Pac. 388."

The authorization of the garnishment of salaries and wages of officers and employees of the state is unquestionably a proper subject of legislation. Many states have adopted this policy and nowhere is the power to do so questioned, except as it may affect constitutional officers. *Cavender* v. *Hewitt*, 145 Tenn. 471, 22 A. L. R. 755, and note at page 760, 239 S. W. 767. The defendants here are not constitutional officers, and it is therefore unnecessary for us to pass upon that feature of the act.

While we are not entirely satisfied as to the constitutionality of some of the administrative features of the act, we think the deference due a co-ordinate branch of the government should resolve any doubt we may entertain in favor of its validity. Such treatment of legislation is accorded by all jurisdictions. In *Coggins* v. *Ely, supra,* we said:

" . . . It is the duty of the court in such cases, and a cardinal rule, to sustain and uphold statutes rather than to ignore or defeat them; to give them operation, if the language will permit, instead of treating them as meaningless. . . . "

If hardships and difficulties are encountered by the officers in the administration of the law, these may be and should be corrected by the legislature.

The judgment of the lower court is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.