988 P.2d 162

**CITY OF SIERRA VISTA, a municipal corporation, Plaintiff/Appellee,**

v.

**DIRECTOR, ARIZONA DEPARTMENT OF ENVIRONMENTAL QUALITY, a state agency, Defendant/Appellant.**

**No. 2 CA-CV 98-0181.**

Court of Appeals of Arizona, Division 2, Department B.

April 29, 1999.

Review Denied Oct. 26, 1999.

Stuart L. Fauver, Sierra Vista, Attorney for Plaintiff/Appellee.

Janet Napolitano, Arizona Attorney General By Nancy Stone Jamison, Phoenix, Attorneys for Defendant/Appellant.

*OPINION*

BRAMMER, Presiding Judge.

¶ 1 Based on the administrative law judge's (ALJ) recommended decision, the Arizona Department of Environmental Quality (ADEQ) ordered the City of Sierra Vista to pay wastewater treatment facility annual registration fees for the years 1991 through 1995 as prescribed in A.R.S. § 49–242. The trial court vacated ADEQ's order, finding unconstitutional the session law that purports to make the fees required of individual aquifer protection permit holders pursuant to § 49–242(C) applicable to those, such as the City, who have not yet been issued a permit. We affirm.

*Facts and Procedural History*

¶ 2 The relevant facts, undisputed by the parties, are as follows. In 1984, the City submitted a notice of disposal to the Arizona

Department of Health Services. Such notices provided the health department information about the extent and type of pollutants discharged by facilities, such as the City's wastewater treatment facility, that could potentially enter the state's aquifers. Sometime after it received a notice, the health department would typically issue the facility a ground water quality protection permit.

¶ 3 In 1986, the Arizona legislature enacted the aquifer protection permit program, A.R.S. §§ 49–241 through 49–252, to be administered by the newly established ADEQ. This program replaced the previous groundwater quality protection permit program. Section 49–241.01 [1] provides that ADEQ must issue, no later than January 2001, an aquifer protection permit to all "groundwater protection permit facilities," which the section defines as facilities for which either a groundwater quality protection permit or a notice of disposal had been issued. The City has neither obtained nor been issued either a groundwater quality protection permit or an aquifer protection permit, and its facility is still operating under the notice of disposal it filed in 1984.

¶ 4 In 1990, the legislature amended § 49–242 [2] to include an annual fee requirement, which is calculated based on a facility's daily discharge or influent of pollutants. Section 49–242(C) provides in relevant part:

> Each owner of a ... wastewater treatment facility to whom an individual permit is issued shall register the permit with the director each year and pay an annual registration fee based on the daily influent of pollutants.

At the same time, the legislature passed a separate provision (the session law),[3] which required owners of facilities that were, on the effective date of the chapter, operating pursuant to either a groundwater quality protection permit or a notice of disposal, and that had not yet been issued an individual aquifer protection permit, to pay fees pursuant to certain statutory provisions not at issue here. In 1991, the legislature amended the session law to add the registration fees required under § 49–242.[4] The amended session law provides in relevant part:

> Pending the issuance of individual aquifer protection permits, the fees established pursuant to sections 49–209, 49–242 and 49–747, Arizona Revised Statutes, ... apply to owners of facilities which, on September 27, 1990, are operating pursuant to the filing of a notice of disposal or a groundwater quality protection permit.

¶ 5 In 1995, ADEQ informed the City for the first time that it was required to pay annual registration fees pursuant to § 49–242. The City paid the fees for 1996 and 1997, but appealed to the Office of Administrative Hearings ADEQ's claim for more than $16,000 in registration fees and accrued interest for the years 1991 through 1995. The City argued that, because it had not been issued an aquifer protection permit, it was not obligated to pay the registration fees required of permit holders under § 49–242 and that the session law, which purportedly makes the required fees applicable to those who have not yet been issued a permit, is unenforceable because it conflicts with the statute. In a separate argument, the City asserted that, pursuant to A.R.S. § 49–250(B)(15), it was exempt from the requirement that it obtain an aquifer protection permit.

■ ¶ 6 In concluding that the City was subject to the annual registration fee, the ALJ found that the session law did not conflict with § 49–242 and that although, pursuant to § 49–250(B)(15), the City was exempt from the requirement that it obtain an aquifer protection permit for the reuse of its treated wastewater on crops,[5] it was still required to obtain such a permit in order to

1. Added by 1991 Ariz. Sess. Laws, ch. 280, § 3.

2. 1990 Ariz. Sess. Laws, ch. 230, § 11.

3. 1990 Ariz. Sess. Laws, ch. 230, § 22.

4. 1991 Ariz. Sess. Laws, ch. 184, § 8, printed in the historical and statutory notes to § 49–242.

5. ADEQ stated at the hearing, however, that such activity in fact requires a reuse permit. See Ariz. Admin. Code R18–9–705. Because this issue is not before us, however, we need not address it.

treat its wastewater. The director of ADEQ adopted the ALJ's recommended decision that the City pay the registration fees and accrued interest for the years 1991 though 1995. The City appealed to superior court, which vacated ADEQ's final decision and order, finding the session law an unenforceable attempt by the legislature to amend § 49–242 by mere reference in violation of article IV, part 2, § 14, of the Arizona Constitution. Although not entirely clear from the trial court's order, it does not appear that it addressed whether the ALJ had correctly found the City's wastewater treatment facility not exempt from paying the registration fees pursuant to § 49–250(B)(15). Because our courts decide cases on nonconstitutional grounds if possible to avoid the unnecessary resolution of constitutional issues, *Little v. All Phoenix South Community Mental Health Center,* 186 Ariz. 97, 919 P.2d 1368 (App.1995), we first address the exemption issue.

*Standard of Review*

¶ 7 When an administrative decision is appealed, both the superior court and this court decide whether the administrative agency acted illegally, arbitrarily, or capriciously, or whether it abused its discretion. *Carondelet Health Servs. v. Arizona Health Care Cost Containment Sys. Admin.,* 182 Ariz. 502, 897 P.2d 1388 (App.1995); *Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prods.,* 167 Ariz. 383, 807 P.2d 1119 (App.1990). We review de novo the agency's interpretation and application of the law. *Arizona Health Care Cost Containment Sys. Admin. v. Carondelet Health System,* 188 Ariz. 266, 935 P.2d 844 (App.1996).

*Exemption*

¶ 8 Section 49–241(B) provides that a facility that has "[s]urface impoundments including holding, storage settling, treatment or disposal pits, ponds and lagoons" is a discharging facility and that any person who owns or operates a discharging facility must obtain an aquifer protection permit unless exempt under § 49–250. The City's wastewater is treated at its facility in a series of "stabilization ponds." The ALJ found, and we agree, that the City's wastewater treatment plant is a discharging facility.

¶ 9 The City nonetheless argues that, because its treated water is ultimately sprayed on fields to irrigate forage crops used to feed cattle, the City's facility is exempt from obtaining an aquifer protection permit pursuant to § 49–250(B)(15). That statute exempts "from the aquifer protection permit requirement of this article ... [a]pplication of water from any source, including groundwater, surface water or wastewater, to grow agricultural crops or for landscaping purposes." ADEQ responds that § 49–250(B)(15) only exempts the City from the requirement that it obtain an aquifer protection permit for its use of the treated wastewater on agricultural crops, but, as the owner of as a discharging facility, it is nevertheless required to obtain an aquifer protection permit to treat the wastewater. The ALJ agreed with ADEQ, as do we.

¶ 10 When construing a statute, our goal "is to fulfill the intent of the legislature that wrote it." *State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993). "[T]he best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). Twenty-four exemptions are enumerated in § 49–250(B). Some of these exemptions pertain to specific types of materials, such as uncontaminated mining overburden; others pertain to particular types of facilities, such as those using Central Arizona Project water for underground storage and recovery projects. Still others pertain to certain types of activities and uses, such as household and domestic activities, the noncommercial use of consumer products by the public, and the provision upon which the City relies, the application of water to grow agricultural crops. Because the statute expressly exempts certain types of facilities, but exempts only that use of treated wastewater applied on crops and not those that supply the treated water, we find the statutory language clearly evinces the legislature's intent not to exempt the latter facilities. In light of

this determination, we agree with the ALJ that § 49–250(B)(15) does not exempt the City from the requirement that it obtain an aquifer protection permit. Accordingly, we turn to the constitutional issue.

*Constitutionality of the Session Law*

¶ 11 In finding against the City on its claim that the session law was unenforceable because it conflicted with § 49–242, the ALJ concluded as follows:

> Rather than conflict with A.R.S. § 49–242 as argued by [the City], the Session Law supplements it. The process of approving or denying aquifer protection permits is scheduled to be completed by January 1, 2001. While A.R.S. § 49–242 specifically requires aquifer protection permit holders to annually register the issued permit with ADEQ's director and pay an annual registration fee pursuant to a statutory fee schedule based upon discharge or influent per day under the permit, the Session Law expands, rather than conflicts with, A.R.S. § 49–242 to include facilities such as [the City's] who are operating pursuant to a previously filed notice of disposal pending the granting or denial of an aquifer protection permit by ADEQ.

¶ 12 In vacating ADEQ's decision and order on review, the superior court found that the City was:

> exempt from paying annual registration fees for its wastewater treatment facility. The key statute, A.R.S. § 49–242(C), states in pertinent part that each owner of a wastewater treatment facility "to whom an individual permit is issued" is required to register that permit and pay an annual registration fee.
>
> It is undisputed that the City does not have and has never been issued an individual permit, and no such permit has been required for the City's activities. The City has operated its facility pursuant to the filing of a notice of disposal.
>
> ADEQ contends that the fees must be assessed against the City because of [the session law].
>
> ....
>
> To the extent that [the session law] purports to include the City within the category of those subject to paying the registration fees, it is an invalid enactment. Art. 4, Part 2, Sec. 14 of the Arizona State[ ] Constitution states: "No Act or section thereof shall be revised or amended by mere reference to the title of such Act, but the Act or section as amended shall be set forth and published at full length." [The session law] did not set forth A.R.S. § 49–242 at full length, or to any extent at all. The only reference is to the section number.
>
> ... If valid, [the session law] would make the City (and those in the same position as the City) pay registration fees when otherwise they would not have to do so. [The session law] is a substantive attempt to make a certain class of wastewater treatment facility operators liable for a registration fee which A.R.S. § 49–242 does not require.

¶ 13 The purpose of article IV, part 2, § 14, of the Arizona Constitution, is to prevent legislative action that amends statutes

> without setting out in full the act as it was intended it should be after amendment.... [Otherwise,] no one could possibly know by reading the act itself what the law was, but before a legislator could vote understandingly upon such an amendment, or one called upon to construe the law after its adoption could do so intelligently, it would be necessary for [the person] to ascertain how the original act with all previous amendments, if any, read. This place[s] an unnecessary burden upon both and the purpose of this provision [is] to prevent legislation in any such manner.

*In re Miller*, 29 Ariz. 582, 594–95, 244 P. 376, 379–80 (1926).

¶ 14 Our courts have previously looked to the state of Washington, which has a constitutional provision similar to ours,[6] for guid-

6. Article II, § 37, of the Washington Constitution provides as follows:

> No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length.

ance in interpreting the meaning or effect of our provision. *See State v. Roseberry,* 37 Ariz. 78, 289 P. 515 (1930); *see generally Kotterman v. Killian,* 193 Ariz. 273, 972 P.2d 606 (1999) (when provisions in Washington Constitution are similar to provisions in Arizona Constitution, law announced by Washington courts very persuasive). Washington's supreme court has noted: "One purpose of th[e constitutional] requirement is to avoid the confusion and uncertainty created by having separate but related provisions scattered throughout legislative volumes. The second purpose is to ensure that legislators are aware of the nature of the law being amended and the effect the particular amendment will have." *Weyerhaeuser Co. v. King County,* 91 Wash.2d 721, 592 P.2d 1108, 1114 (1979) (citation omitted).

¶ 15 " 'An act of the legislature, not amendatory in character, but original in form, and complete in itself, exhibiting on its face what the law is to be, its purpose and scope, is valid, notwithstanding it may, in effect, change or modify some other law upon the same subject.' " *State Tax Comm'n v. Shattuck,* 44 Ariz. 379, 390, 38 P.2d 631, 636 (1934), *quoting Roseberry,* 37 Ariz. at 86, 289 P. at 518. The constitutional provision distinguishes between a legislative act, the primary purpose of which is to amend another legislative provision, and one that does so merely as an incidence to another legislative purpose. *See Arizona Tax Comm'n v. Dairy & Consumers Co-operative Ass'n,* 70 Ariz. 7, 14–15, 215 P.2d 235, 240 (1950) ("[I]f an act independent, distinct and complete in itself incidentally repeals a part of an earlier act in conflict therewith such repeal is not affected by [article IV, part 2, § ] 14.").

¶ 16 ADEQ contends the trial court erred in finding that the 1991 session law violated the constitutional prohibition against amending legislation by reference, arguing both that its purpose and effect was not to amend § 49–242 but simply to amend the 1990 session law and that no constitutional violation occurred because the legislature set forth the 1990 session law in its entirety in the 1991 bill that amended it. ADEQ's argument is unavailing because we find the 1991 legislative action clearly amended § 49–242, notwithstanding that it also amended the session law. As such, we approve and adopt the trial court's reasoning.

¶ 17 A statute that refers to a prior statute is not amendatory or revisory in character if the " 'two statutes coexist as separate and distinct legislative enactments, each having its appointed sphere of action; and the alteration, change, or repeal of the one does not operate upon or affect the other.' " *Roseberry,* 37 Ariz. at 84, 289 P. at 518, *quoting Phoenix Assurance Co. of London v. Fire Dep't of City of Montgomery,* 117 Ala. 631, 23 So. 843, 847 (1898). If the legislature were to repeal the annual registration fee requirement of § 49–242 for aquifer protection permit holders, that part of the session law making the § 49–242 fees applicable to those who have not yet been issued a permit would no longer serve any purpose. Further, we find, as did the ALJ, that the clear purpose and effect of the session law is to expand the ambit of § 49–242. *See Weyerhaeuser Co.* (determination of whether act is amendatory in character is whether it changes prior act in scope and effect). Accordingly, we find the session law is amendatory in character.

¶ 18 ADEQ also argues that, although § 49–242 and the session law address the same subject matter, they are independent provisions of law. We disagree. A legislative provision is complete in itself if its terms can be understood and executed without referring to previous legislation. *State v. Pelosi,* 68 Ariz. 51, 199 P.2d 125 (1948), *overruled in part on other grounds, Adams v. Bolin,* 74 Ariz. 269, 247 P.2d 617 (1952). The basic import of the session law is clear: certain types of fees apply to facility owners who are awaiting the issuance of aquifer protection permits. Because the session law fails to indicate at a minimum the type of fees to which the facility owners are to be subject, however, it lacks even the most basic information necessary to implement its directive. Rather, one must refer to § 49–242 and the other statutes included by reference in the session law for guidance as to both the substantive and procedural details for paying the fee under each. Thus, we conclude the

session law is not an independent provision of law.

¶ 19 Among the purposes of the constitutional requirement is the need "to apprise those who are affected by an existing law of any important changes." *Washington Education Ass'n v. State,* 93 Wash.2d 37, 604 P.2d 950, 952 (1980). Therefore, "[t]he constitution is violated ... if an act refers to a prior statute, which is changed but not repealed, 'so that the full declaration of the legislative will on the subject can only be ascertained by reading both statutes.'" *Weyerhaeuser Co.,* 592 P.2d at 1114, *quoting State ex rel. Arnold v. Mitchell,* 55 Wash. 513, 104 P. 791, 793–94 (1909). Because one must look both to § 49–242 and the later-enacted session law to determine those subject to the annual registration fee prescribed in the statute, the session law violates the constitutional prohibition.

¶ 20 Another purpose of the constitutional requirement is to prevent the practice by which the legislature amends statutes "in a contextual vacuum." *State v. Fridley,* 126 Ariz. 419, 421, 616 P.2d 94, 96 (App.1980). When, as here, the legislature is asked to amend or revise a statute, and the legislative proposal under consideration refers only to the statute's number, without describing in the proposal the statute's text, or even its title, indicating to what subject matter the proposal refers, the wisdom of strictly following the constitutional provision is clearly illustrated. Because the session law amended § 49–242 without setting forth and publishing that statute at full length, we agree with the superior court that the session law is an unconstitutional enactment and, thus, is invalid.

¶ 21 Accordingly, we affirm the superior court's ruling.

CONCURRING: PHILIP G. ESPINOSA, Judge, and KENNETH LEE, Judge.*

* A Judge of the Pima County Superior Court authorized and assigned to sit as a Judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed February 23, 1999.