**KALOLO STOWERS, Appellant**

v.

**AMERICAN SAMOA GOVERNMENT, Appellee**

---

**FAATULU SAMANA, Appellant**

v.

**AMERICAN SAMOA GOVERNMENT, Appellee**

High Court of American Samoa
Appellate Division

AP No. 03-01
AP No. 12-01

March 24, 2003

16

Before RICHMOND, Associate Justice; WALLACE,[*] Acting Associate Justice; MOLLWAY,[**] Acting Associate Justice; MAMEA, Associate Judge; SAGAPOLUTELE, Associate Judge.

Counsel: Curtis E. Sherwood, Assistant Public Defender, for Appellants Kalolo Stowers and Faatulu Samana
Fainu'ulelei L.F. Ala'ilima-Utu, Assistant Attorney General, for Appellee American Samoa Government.

## OPINION AND ORDER

In these two consolidated appeals, Defendants-Appellants Faatulu Samana and Kalolo Stowers appeal from the district court's denial of their separate motions for a new trial. The district court in each case determined that neither A.S.C.A. § 3.0232 nor the American Samoa Constitution gave the defendants a right to a jury trial in the district court. The district court had jurisdiction under A.S.C.A. § 3.0302. We have jurisdiction over this timely appeal pursuant to A.S.C.A. § 3.0309. We reverse and remand for new trials.

---

[*] The Honorable J. Clifford Wallace, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation of the Secretary of the Interior.
[**] The Honorable Susan Oki Mollway, District Judge, United States District Court of the District of Hawaii, sitting by designation of the Secretary of the Interior.

## I.

Samana and Stowers were separately charged with driving under the influence of alcohol, a class A misdemeanor, A.S.C.A. § 22.0707, punishable by up to one year imprisonment, A.S.C.A. § 46.2301, and/or up to a one thousand dollar fine. A.S.C.A. § 46.2102. Over their objections, the cases were heard by the district judge rather than a jury. After they were convicted, each filed a motion for a new trial, arguing he had a statutory and constitutional right to a jury trial. Each of these motions was denied.

## II.

■ Whether the defendants have a right to a jury trial in the district court under A.S.C.A. § 3.0232 is a question of law we review *de novo*. *Anderson v. Vaivao*, 21 A.S.R.2d 95, 98 (App. Div. 1992) (questions of law are reviewed *de novo*); *see also Kulas v. Flores*, 255 F.3d 780, 783 (9th Cir. 2001) (the right to a jury trial is a question of law reviewed *de novo*).

Here we are called upon to interpret A.S.C.A. § 3.0232, which states:

> (a) Any person charged with an offense carrying a maximum possible punishment of over 6 months of imprisonment shall be tried by a jury unless he personally waives this right in writing or in open court. The Chief Justice of the High Court may promulgate Petit Jury Rules and Standard Jury Instructions to govern jury trials in the High Court and district court. The petit jury shall be comprised of 6 persons. The jury verdict must be unanimous. Voir dire of prospective jurors shall be conducted by the court.
> (b) Notwithstanding any law to the contrary, whenever petit jury trials are held as provided in subsection (a), 2 associate judges shall sit with either the Chief or Associate Justice, who acts as presiding judge of the court. All questions of law shall be ruled upon by the presiding judge.

Both the language and the history of the statute demonstrate that A.S.C.A. § 3.0232 provides Stowers and Samana with a right to a jury trial in the district court.

## A. Interpretation of the Statute

Clearly, the first sentence of Section 3.0232(a) gives them this right, and the sentence admits of no exceptions or qualifications. To read the right as lacking in the district court is to read out of existence Section

3.0232(a)'s expressly allowing the Chief Justice of the High Court to promulgate petit jury rules "to govern jury trials in the . . . district court."

The government presents a number of arguments against this interpretation of the statute. First, the government argues that even if Section 3.0232(a) permitted jury trials in the district court, the language of Section 3.0232(b) governing the composition of the court somehow trumps Section 3.0232(a). The Chief Justice and Associate Justice preside over High Court cases, A.S.C.A. § 3.1002(a), and associate judges sit in the High Court. A.S.C.A. § 3.1005. District court sessions, in comparison, are conducted by "a district court judge sitting alone." A.S.C.A. § 3.0303(a). The government argues that subsection (b)'s requirement of two associate judges sitting with the Chief or Associate Justice presiding must mean that jury trials may not be conducted in the district court, because district court proceedings are conducted by a district judge alone.

The government errs in its reading of subsection (b) as a descriptive, rather than a prescriptive, statement of the composition of the court in hearing jury trials. Subsection (b) does not simply describe the court that hears jury trials; rather, it prescribes the composition of the court when hearing jury trials. Thus, subsection (b) is prefaced by the phrase "[n]otwithstanding any law to the contrary," to demonstrate that subsection (b) trumps the Code provisions providing district court sessions are to be conducted by a district court judge sitting alone.

■ The government's reading of the statute would make nonsense of subsection (a)'s explicit reference to the district court. When the legislature speaks in the form of a properly adopted statute, courts must attempt to provide a rational interpretation. The government's reading would also make unnecessary A.S.C.A. § 3.0232(b)'s explanation that "either the Chief or Associate Justice . . . .act[ ] as presiding judge of the court." If jury trials were held only in the High Court, subsection (b)'s explanation would be redundant, because the Chief Justice or Associate Justice preside over the High Court. A.S.C.A. § 3.1002(a).

■ The government's textual arguments violate the elementary canon of construction that a statute is not to be construed to render its provisions mere surplusage. *See TRW, Inc. v. Andrews*, 534 U.S. 19 (2001); *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002); *Am. Vantage Cos. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002); *United States v. Fiorillo*, 186 F.3d 1136, 1153 (9th Cir. 1999). Instead, each provision of a statute is to be given full effect. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001); *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1177 (9th Cir. 1999); *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 834 (9th Cir. 1996). Additionally, given the explicit language of the amendment's preamble,

we will not pretend that the insertion of the words "district court" was a slip of the pen. Pub. L. No. 16-53 (1980) ("A number of statutes are amended by substituting the words 'district court' for 'trial division of the High court' [sic] . . . to clear up inconsistencies in the Code concerning jurisdiction of the district court and High Court.").

Finally, the government argues that because of the placement of the jury trial statute in the chapter entitled "High Court," and not in the chapter entitled "District Court," the statute should not be interpreted to permit jury trials in the district court. Yet section headings "are for the purpose of convenience only, and are not to be considered a part of any section, or as altering or affecting in any way the provisions of any section." A.S.C.A. § 1.0102. Moreover, a more coherent interpretation of the statute would dictate that the placement of the statute in the High Court chapter is to reflect the fact that the High Court Justices are to preside over the jury trial, even when the trial is conducted in the district court.

## B. History of the Statute

Not only does the text of the statute support the conclusion that jury trials are to be held in district court, but the history of the statute supports it as well. The jury trial provision came on the heels of *King v. Andrus*, 452 F. Supp. 11, 17 (D.D.C. 1977), which held that the United States constitutional right to a jury trial extended to the territory of American Samoa. In response, the American Samoa Legislature enacted legislation authorizing jury trials in felony cases. 5 A.S.C. 413(a) (Supp. 1979). Approximately six months later, the Legislature created the District Court system (District Court Act) and, within a year of that, amended the District Court Act to correct inconsistencies between it and the petit jury trial statute. Pub. L. No. 16-53 (1979). The amendment extended the jury trial right from felony cases to all "offense[s] carrying a maximum possible punishment of over 6 months of imprisonment," forming the current A.S.C.A. § 3.0232(a).

The Legislature believed that the former petit jury trial statute's provision for jury trials only in felony cases fell short of the requirements of *Andrus*. Pub. L. Pub. L. No.16-53 (1979) ("The statute governing jury trials is amended to provide jury trials for all offenses carrying sentences of over six months, in conformity with constitutional requirements."). At that time, though not necessarily today, this was a reasonable conclusion. Years before *Andrus*, the Supreme Court held that the right to a jury applied to all crimes carrying a maximum penalty of more than six months. *Baldwin v. New York*, 399 U.S. 66, 69 (1970) (plurality opinion); *accord United States v. Rylander*, 714 F.2d 996, 1005 (9th Cir. 1983). Given the Legislature's likely concern with the constitutionality of denying a jury trial to a defendant charged with an offense carrying a maximum penalty of more than six months, it is a

reasonable conclusion that the Legislature did not intend the statutory jury trial right extend only to those defendants charged with such crimes before the High Court, but not before the district court.

## III.

The district court held that interpreting the statute to permit jury trials in the district court would amount to an unconstitutional amendment by reference. American Samoa's Constitution states, "No law shall be amended or revised by reference to its title only; but in such case the act, as revised, or section or sub-section as amended, shall be reenacted and published at full length." AM. SAM. REV. CONST. art. II, § 17. The district court stated that this constitutional mandate was violated when the legislature amended the statute because it failed to republish other subsections of the Code dealing with district court. Thus, the district court concluded:

> the Legislature may have intended, by including by reference the "District Court" as falling under the rules to be promulgated for petit juries in subsection (a) of A.S.C.A. § 3.0232, that the statutory right to a jury trial be afforded to misdemeanants tried before the District Court. Yet amendment by reference is precisely what Sec. 17, Article II of the Revised Constitution prohibits.

*Am. Samoa Gov't v. Petelo Lafaele*, DCCA No. 43-00, slip op. at 18 (Dist. Ct. July 13, 2000).

Several states have enacted nearly identical constitutional provisions. ALA. CONST. art. IV, § 45 ("[N]o law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length"); ARIZ. CONST. art. IV, § 14 ("No Act or section thereof shall be revised or amended by mere reference to the title of such Act, but the Act or section as amended shall be set forth and published at full length"); ILL. CONST. art. IV, §8(d) ("A bill expressly amending a law shall set forth completely the sections amended"); TEX. CONST. art III, § 36 ("No law shall be revived or amended by reference to its title; but in such case the act revived, or the section or sections amended, shall be re-enacted and published at length."); WASH. CONST. art. II, § 37 ("No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length"). These states' interpretation of provisions similar to Section 17 informs our decision.

■ Some states employ a test asking two questions to determine whether a statute presents an unconstitutional amendment by reference. The first

22

question is whether the amendment is such a complete act so that "the scope of the rights or duties created or affected by the legislation . . . can be determined without referring to any other statute or enactment." *Amalgamated Transit Union Local 587 v. State*, 11 P.3d 762, 800-01 (Wash. 2001); *accord State v. L.N.A.0*, 811 So. 2d 637, 642-43 (Ala. Crim. App. 2001); *City of Sierra Vista v. Dir., Ariz. Dep't of Envtl. Quality*, 988 P.2d 162, 167-68 (Ariz. Ct. App. 1999); *Elford v. City of Rattle Ground*, 941 P.2d 678, 683 (Wash. Ct. App. 1997) (amendment which is virtually incomprehensible without referring to another statute is not a complete act). The second question is whether "a straightforward determination of the scope of rights or duties under the existing statutes be rendered erroneous by the new enactment." *Amalgamated Transit*, 11 P.3d at 801; *accord In re King*, 49 P.3d 854, 858-59 (Wash. 2002); *L.N.A.*, 811 So. 2d at 642. If the amended statute is sufficiently complete and does not render existing statutes erroneous, then Section 17 is not violated. If the amended statute is either incomplete or renders existing statutes erroneous, and fails to reenact and publish these preexisting statutes, then Section 17 is violated.

■ The amendment to the petit jury statute is complete because it can be understood without reference to other acts. The amendment republished the former subsection in full, and clearly signified what was amended and how. An accused misdemeanant's right to a jury trial can be determined without referring to any other statute. While the procedural nuances of the jury trial are determined only by examining pre-existing statutes, the scope of the right created by subsection (a), an accused misdemeanant's right to a jury trial in the district court, can be determined without reference to any other statute. The amendment is not incomplete or unintelligible merely because executing its provisions requires resort to other statutes. *L.N.A.*, 811 So. 2d at 643.

■ Moreover, though subsection (b) was not republished, this does not amount to a violation of section 17. Section 17 states that if a law is amended, the "sub-section as amended, shall be reenacted and published at full length." Section 17 does not require the re-enactment and publication of an entire statute when the amendment affects only one subsection. *See, e.g., Freeman v. Purvis*, 400 So. 2d 389, 392 (Ala. 1981) (the prohibition of amendment by reference "does not necessarily require the re-enactment of an entire legislative Act when only one section is to be amended. An amendatory Act publishing at length the section to be amended is sufficient."); *accord L.N.A.*, 811 So. 2d at 640.

The second question is also satisfied: a straightforward determination of the scope of rights or duties under the existing statutes would not be rendered erroneous by the amendment. Prior to the amendment, the Code was silent as to an accused misdemeanant's right to a jury trial in the district court. Though the amended petit jury statute may impliedly

*affect* other sections, it would be absurd to require the legislature to identify and publish all statutes that might be· affected by every amendment.

> [T]o say that every statute which thus affects the operation of another is therefore an amendment of it would introduce into the law an element of uncertainty which no one can estimate. It is impossible for the wisest legislator to know in advance how every statute proposed would affect the operation of existing laws.

*Am. Lung Ass'n v. Wilson*, 59 Cal. Rptr. 2d 428, 432 (Cal. Ct. App. 1996) (quoting *Hellman v. Shoulters*, 44 P. 915, 920 (Cal. 1896)). Because the amended petit jury statute does not render erroneous the scope of rights or duties under pre-existing statutes, the second question in the test is satisfied. Section 17's prohibition of amendments by reference was not violated.

## IV.

We are bound by the explicit language of the statute, which unequivocally requires all jury trials to be heard before two associate judges sitting with either the Chief or Associate Justice, even if the jury trial is held before the district court. A.S.C.A. § 3.0232(b). "As in all statutory construction cases, we begin with the language of the statute . . . . The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (internal quotation marks and citation omitted); *accord Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). Though applying subsection (b) to jury trials held in the district court might be an "administrative nightmare," as the dissent suggests, we cannot substitute· our policy judgments for the legislature's. We interpret statutes; we cannot rewrite them.

The dissent argues that the legislature clearly intended the District Court to be a single-judge court. Yet the statute expressly requires three judges in all jury trials. A.S.C.A. § 3.0232(b). Except for the language of the statute, there is no clear indication of what the legislature's intent was. The legislators and staff might have overlooked subsection (b) in P.L. 16-53, but we are bound by the clear words of the statute, and we cannot speculate as to what the legislators might have overlooked, and hypothesize what they would have done had they remembered subsection (b). "In analyzing a statute, we begin by examining the text, not by psychoanalyzing those who enacted it." *Carter v. United States*, 530 U.S. 255, 271 (2000) (internal quotation marks and citation omitted).

24

The dissent argues that our interpretation of the statute leads to an "absurd result" because it would work a change in the way that the composition and powers of the Chief Justice, Associate Justice, and the district court are specified in other sections of the code. Yet a statute is not absurd because it is an exception to other statutes. A statute is not irrational simply because it changes the prevailing practice. Otherwise, legislatures would be condemned to enact only those statutes that change nothing.

While we understand the administrative hardship the statute may bring, we lack the power to ignore the statute's clear language. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Barnhart*, 534 U.S. at 461-62 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). The dissent has identified a significant and important problem. We do not disagree. But the answer to the stated problem must be found by the legislature. It has full power to amend the statue; separation of powers prevents us from doing so.

## V.

Thus, under A.S.C.A. § 3.0232(a), every defendant "charged with an offense carrying a maximum possible punishment of over 6 months of imprisonment," whether appearing before the High Court or the district court, has the right to a jury trial. Even when the jury trial is held in the district court, "2 associate judges shall sit with either the Chief or Associate Justice, who acts as presiding judge of the court." A.S.C.A. § 3.0232(b). This right was violated by the district court.

Our interpretation of the statute is in harmony with the well-established principle that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *United States ex rel Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909); *accord United States v. Jin Fuev Moy*, 241 U.S. 394, 401 (1916); *Murray v. The Charming Betsy*, 2 Cranch 64 (1804). This centuries-old principle of judicial restraint continues to this day. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001); *I.N.S. v. St. Cyr.*, 533 U.S. 289, 299-300 (2001); *Jones v. United States*, 529 U.S. 848, 858 (2000); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1122 (9th Cir. 2002); *Ma v. Ashcroft*, 257 F.3d 1095, 1106 (9th Cir. 2001); *United States v. Bulacan*, 156 F.3d 963, 974 (9th Cir. 1998).

As jurisprudential considerations of advisory opinions, mootness, ripeness, standing, and other rules of judicial self-restraint

demonstrate, judicial review is a reluctant power, exercised only when and to the extent necessary to resolve disputes appearing before the court. Courts are not to "lightly assume that [the legislature] intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it." *St. Cyr.*, 533 U.S. at 300 n.12 (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)); *accord Rust v. Sullivan*, 500 U.S. 173, 191 (1991); *Rescue Army v. Mun. Court of City of Los Angeles*, 331 U.S. 549, 571 (1947). Moreover, constitutional issues are not to be needlessly confronted, as judicial review of legislative acts presents a grave and final act, difficult to change and in tension with a pure democratic system. A constitutional holding can be reversed by other government actors only by the arduous process of constitutional amendment. Further, judicial restraint is necessary because of the judiciary's inherent limitations "arising especially from its largely negative character and limited resources of enforcement." *Rescue Army*, 331 U.S. at 571. To maintain their credibility and preserve their normative capital, courts must be diligent in avoiding gratuitous constitutional analysis.

The statute's text and history, as well as the canon of construction of avoiding unnecessary but grave constitutional questions, require us to interpret the statute as we have. However, if the statute were later to be amended to remove the criminal jury trial power from the district court, the later amended statute would not necessarily be unconstitutional. It is constitutional doubts, not the certainty of unconstitutionality, that is the precondition to the canon of construction we invoke.

Reversed and remanded.

It is so ordered.

---

MOLLWAY, Acting Associate Justice, concurring.

Although I join in the prevailing opinion, I write separately to address an issue raised by the dissent. As the dissent notes, the prevailing opinion is not joined in by any judge who lives in American Samoa. Instead, I and my colleague on that opinion are acting associate justices, invited to sit in light of conflicts that preclude a full complement of justices based in American Samoa. I recognize that it is the dissenters and other members of American Samoa's bench who will have to deal with the effects of our holding today. I do not, however, for that reason cavalierly join in the prevailing opinion. To the contrary, it is only because I conclude that the statutes in issue demand our result that I join in it. If I could, in good faith, reach a contrary result true to the statutory language, I would gladly do so.

The record contains no evidence indicating that the Legislature intended anything other than what the statutes provide. The dissent argues that, to those who live in American Samoa, it is clear that the Legislature did not intend to enact what it did enact. But when the record does not actually establish such an error, a court, whether in American Samoa or elsewhere, cannot rewrite legislation. To permit judicial redrafting would be particularly dangerous here, where the legislation concerns the court itself. I must trust that, if the Legislature of American Samoa did not intend the result stated in the prevailing opinion, it will act promptly to correct its own pronouncements.

---

RICHMOND Associate Justice, SAGAPOLUTELE, Associate Judge, and MAMEA, Associate Judge, concurring in part and dissenting in part.

We join the prevailing opinion insofar as it declares that the defendants have a right to a jury trial in the District Court. We disagree, however, with its conclusion that jury trials in the District Court must be conducted by the Chief or Associate Justice of the High Court, joined by two Associate Judges. We do not believe this was the intention of the Legislature. When appropriate, we would adhere to the principles of judicial statutory interpretation enunciated in the prevailing and concurring opinions. However, we believe that these stated principles are misapplied in this case. In our view, the prevailing opinion unnecessarily creates a result of potentially titanic impracticality—a result directly in conflict with various statutes regulating the composition of the High Court and District Court, and defining the functions of the Justices and Judges of our court system.

## Standard of Review

In construing a statute, while we must give due weight to its explicit language, we are not bound to interpret the statute so as to create an absurd result. We characterize the result as "absurd" not in any derogative or pejorative sense but as a word of art employed in the judicial standard applicable, in our view, to the issue before the Court.

"It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers." *Mova Pharm. Corp v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998) (quoting *Holy Trinity Church v. United States*, 143 U. S. 457, 459-60 (1892)); *In re Pac.-Atl. Trading Co.*, 64 F.3d 1292, 1303 (9th Cir. 1995) (Court should not "presume Congress intended an absurd result"); *Bechtel Const., Inc. v. United Bd. Of Carpenters*, 812 F.2d 1220, 1225 (9th Cir. 1987) ("Legislative enactments should never be construed as establishing statutory schemes

27

that are illogical, unjust, or capricious."). When such a situation arises, "in determining how to avoid an absurdity generated by the plain language of a statute, a court is to look to [legislative] intent." *In re Investment Bankers, Inc.*, 4 F.3d 1556, 1564 (10th Cir. 1993). "[T]he intention of the drafters, rather than the strict language, controls." *Mova Pharmaceutical Corp*, 140 F.3d at 1068 (quoting *United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989)).

## Discussion

### A. The Prevailing Holding Will Have Absurd Results

We acknowledge, as set forth in the prevailing opinion, that A.S.C.A. §3.0232(a) was clearly intended to extend the right of a jury trial to the District Court. Further, the plain language of A.S.C.A. § 3.0232(b) would seem to dictate that when such jury trials are had at the District Court, they shall be presided over by the Chief or Associate Justice of the High Court and two Associate Judges. The prevailing opinion stops there, though, ignoring the implications of such a construction. The Chief Justice and Associate Justice, by statute, are only assigned to the various divisions of the High Court. *See* A.S.C.A. §§ 3.0209(a) ("The Chief or the Associate Justice shall have power to hear and determine alone any preliminary or supplementary matter in any case before *the divisions of the High Court*") (emphasis added), 3.1002 ("The Chief Justice and the Associate Justice shall preside at all [the High Court's] divisions"), 3.0220 (Appellate Division), 3.0230 (Trial Division), 3.0240 (Land and Titles Division). The same restriction applies to the Associate Judges. That is, by statute, they are only assigned to sit on cases at the High Court. *See* A.S.C.A. §§ 3.0210 ("The associate judges shall be entitled to be heard on all questions before *any division of the High Court*") (emphasis added), 3.1004 ("There shall be no less than 5 associate judges of the *High Court*") (emphasis added), 3.0220 (Appellate Division), 3.0230 (Trial Division), 3.0240 (Land and Titles Division).

On the other hand, the District Court is composed of only District Court Judges. A.S.C.A. § 3.0301. No statute envisions the Chief Justice, Associate Justice, or any Associate Judge sitting at the District Court. Indeed, "[a]ll sessions of the district court are conducted by a district court judge *sitting alone*." A.S.C.A. § 3.0303 (emphasis added)

Furthermore, it makes sense that the Associate Judges are not designated to sit at the District Court. The District Court does not have jurisdiction over matai titles; the High Court has exclusive jurisdiction. A.S.C.A. § 3.0208(b). And it is in these cases that the Associate Judges perform their most integral function—determining the result in matai title controversies. *See, e.g., In re Matai Title "Tuaolo,"* 28 A.S.R.2d 137

28

(Land and Titles Div. 1995) (if majority of the four associate judges agree in result, presiding Justice need not even vote); *compare* A.S.C.A. § 3.0241(b) (Justice's decisional role limited to resolving a tie vote among the Associate Judges in matai title cases), *with* A.S.C.A. §§ 3.0221 (difference of opinion between Justices and Associate Judges in Appellate Division), 3.0231 (difference of opinion between Justice and Associate Judges in Trial Division), 3.0241(a) (difference of opinion between Justice and Associate Judges in land cases).

The prevailing opinion disregards this carefully crafted organizational scheme and implicitly declares that the Legislature, with the slip of a pen, clearly intended to overlook the current structure of our judiciary. *Nelson v. Irvine*, 143 F.3d 1196, 1207 (9th Cir. 1998) ("Sections of statutes should be construed consistently with other statutory sections whenever possible."). This result is clearly absurd, inconsistent, and impractical. To read the statute in such a way will create, to say the least, an administrative nightmare. The High Court has only seven authorized and budgeted judicial positions, two Justices and five Associate Judges, and is therefore not equipped to man both the High Court and District Court on any regular or routine basis. It would be particularly and unnecessarily burdensome when jury trials are scheduled in both courts.[1]

## B. The Intent of the Legislature

The prevailing opinion is not only problematic. We do not believe it effectuates the actual intent of the Legislature clearly evident in the evolutionary development of A.S.C.A. § 3.0232.

The Legislature understood, when it enacted the original version of A.S.C.A. § 3.0232 (5 A.S.C. 413, the present code's forerunner at that time), P.L. No. 15-100 (1978) that *King v. Andrus*, 452 F. Supp. 11 (D.D.C. 1977), required jury trials in felony prosecutions. Felony prosecutions were then, and still are, only heard before the High Court. A.S.C.A. § 3.0208. At that juncture, we think the Legislature clearly expressed that intent in A.S.C.A. § 3.0232(a) (then 5 A.S.C. § 413 (a)) by applying the statute to the High Court. Moreover, A.S.C.A. § 3.0232(b) (then 5 A.S.C. § 413(b)) clearly complemented subsection (a) as originally enacted. Thus, the phrase "Notwithstanding any law to the

---

[1] To further emphasize our point, one can wonder why, if the Legislature intended Justices and Judges of the High Court to sit on all jury trials, it did not simply provide that all jury trials take place at the High Court? The prevailing opinion apparently sees nothing absurd about uprooting the High Court's judges and other resources to the District Court each time a jury trial is held there. We will not attribute such illogic to the Legislature.

contrary," in our understanding, had meaning only in reference to the usual Trial Division quorum requirement of one sitting Associate Judge. A.S.C.A. § 3.0230 (then 5 A.S.C. § 408(c)).[2]

The Legislature enacted P.L. No. 16-53 (1980) 18 months later. That act "refined" numerous provisions of the "District Court Act of 1979," including recognition of the constitutional requirement of jury trials in prosecutions of offenses having potential sentences of more than six months, and as stated in the preamble, with the intention to eliminate statutory inconsistencies concerning the respective jurisdictions of the High Court and District Court.

It seems clear that the author of the bill that became P.L. 16-53, and during the legislative process, the legislators and their staff, overlooked A.S.C.A. § 3.0232(b) and thereby failed to provide clear consistency between subsections (a) and (b) for purposes of the distinctly different and normal composition of judges sitting on jury trials in the High Court and District Court. The oversight, in our view, did not alter the original and readily apparent intent of only mandating two Associate Judges sitting on all jury trials in the High Court—a practice routinely followed. *See MCI Telecomm. Corp. v. Am. Tel. & Tel. Co,* 512 U.S. 218, 228 (1994) ("[T]he most relevant time for determining a statutory term's meaning" is when the act became law). We see no reason why we are compelled to interpret subsection (b) other than the evident way the Legislature originally intended.

## Opinions Compared

The prevailing opinion correctly states that a "statute is not irrational simply because it changes the prevailing practice." But dramatically altering not just prevailing practice but the entire court structure is certainly a sign that such a statute may be problematic. When such a situation arises, our goal as a court is to make sense of the overall statutory scheme, to reconcile the conflicts and harmonize legislative enactments. We should not abdicate this responsibility simply because the plain language of a statute allows for a plausible, yet probably unintended, result. *See Pub. Citizen v. Dep't of Justice,* 491 U.S. 440, 454-55 (1989).

It seems that the philosophy of statutory interpretation expressed in the

---

[2] The prevailing opinion uses this clause to sanction a 'wholesale revision of our courts' composition, without pausing to question its effect. As stated, we think this language references the number of Associate Judges sitting on a jury trial in the High Court. At the very least, the lack of a consensus as to the purpose of this clause suggests that the plain language of this statute is far from clear.

prevailing opinion differs from the one set forth in this separate opinion. Both methods are reasonable, and we do not mean to discredit the prevailing opinion's approach. Nonetheless, in our view, the interpretive philosophy of the prevailing opinion is unsuitable in this instance. The prevailing opinion's claim that there is no indication of what the Legislature intended belies reality.[3] Though not overwhelming on the intent issue, the timing of the amendments, existing statutes, and the structure of the Judiciary, coupled with local practice and understanding are sufficient to provide us with a legislative history. Or simply put, there is evidence of the proper context in which to view this statute.

What is considered legislative history in stateside jurisdictions—as examples, records of the proceedings of committee hearings, floor debates, and joint resolutions—is still largely non-existent in this jurisdiction. In saying what the law of this Territory is—what a statute means—we must be cognizant of all relevant factors, of local customs and traditions, and we must allow common sense to prevail. Perhaps this is the most glaring divide between the prevailing opinion and our separate opinion.

In this respect, the three local judges adhering to this separate opinion agree on one interpretation of the statute. The prevailing opinion consists of the two visiting Acting Justices and their contrary view. Thus, while the vote count stands at 2 to 3, the law commands that their opinion prevails. *See* A.S.C.A. § 3.0221. But this only emphasizes the divide between our viewpoint and the reasoning of the prevailing opinion. In putting form over substance, the prevailing opinion expresses fidelity to a legal dogma that will create a great burden on the Territory and the Judiciary's resources. In deference to local knowledge and experience with interpreting the Territory's legislation, we believe that our view is the view of the Legislature.

### Conclusion

---

[3] Ironically, according to the prevailing opinion, it seems that even if there had been express, rather than implicit, legislative history contradicting their interpretation of the plain meaning of the statute, they would still not use it as guidance. *See supra* at 24 ("When the words of a statute are unambiguous, then 'judicial inquiry is complete.'"). *Contrast, e.g., Pub. Citizen*, 491 U.S. at 455 (quoting *Boston Sand & Gravel Co. v. United States*, 278 U.S. 41, 48 (1928) ("Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention, since the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.'")).

Accordingly, while we concur in the decision stated in the prevailing opinion that an accused is entitled to a jury trial in the District Court, we dissent from the holding in that opinion that requires a Justice and two Associate Judges of the High Court to sit on jury trials conducted in the District Court.

In view of the prevailing opinion, we urge the Legislature to enact clear legislation in the immediate future stating its intention on the judicial composition sitting on jury trials in the District Court, whether the District Court Judge presides or otherwise.